IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
LAFAYETTE DIVISION

| | |
|---|---|
| DAVID LIN, MD, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Cause No. 4:21-cv-00057 |
| FRANCISCAN ALLIANCE, INC. d/b/a FRANCISCAN ST. ELIZABETH HEALTH and FRANCISCAN ALLIANCE, INC. d/b/a FRANCISCAN PHYSICIAN NETWORK, | ) ) ) ) ) ) ) |
| Defendants. | ) |

**COMPLAINT FOR DAMAGES AND DEMAND FOR TRIAL BY JURY**

Plaintiff David Lin, MD, by counsel, for his Complaint for Damages and Demand for Trial by Jury, states as follows:

## I.   INTRODUCTION

1. This is an action brought by DAVID LIN, MD ("Dr. Lin") against Defendants FRANCISCAN ALLIANCE d/b/a FRANCISCAN ST. ELIZABETH HEALTH and FRANCISCAN PHYSICIAN NETWORK (collectively, "Franciscan"), between which parties there is an employment relationship. Franciscan violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII") during Dr. Lin's employment with Franciscan, by disciplining him and subjecting him to multiple peer review actions without cause on the basis of his Taiwanese national origin and Asian race. Franciscan acted deliberately and in violation of Dr. Lin's civil rights on the basis of his national origin and race. Franciscan also violated Dr. Lin's civil rights by subjecting Dr. Lin to a hostile work environment based on his national origin and race as well as retaliating against him for reporting discrimination and a hostile work environment to Franciscan, which are further violations of Title VII.

## II.   EEOC COMPLIANCE

2. Dr. Lin exhausted all of the administrative proceedings available to him by timely filing a Charge of Discrimination on the basis of national origin, race, and retaliation with the U.S. Equal Employment Opportunity Commission ("EEOC").

3. Dr. Lin filed his Charge of Discrimination with the EEOC on or about January 8, 2021.

4. Dr. Lin's Charge of Discrimination was filed by the EEOC under two different charge numbers, one per Defendant, under Charge Numbers 470-2021-01020 and 470-2021-01022. Copies of Dr. Lin's Charges are attached hereto and marked as Exhibits 1 and 2.

5. Dr. Lin's Charge was timely filed in compliance with 29 U.S.C. § 626, 42 U.S.C. § 12117 and 42 U.S.C. § 2000e-5.

6. Dr. Lin received Dismissals and Notices of Rights for each Charge Number on May 27, 2021, which were dated May 27, 2021. True and accurate copies of the Dismissals and Notices of Rights are attached hereto and marked as Exhibits 3 and 4.

7. This action was therefore timely filed within ninety (90) days of receipt by Dr. Lin of the Dismissal and Notice of Rights.

## III.   JURISDICTION

8. Jurisdiction of the Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, and 1343 as well as 42 U.S.C. § 2000e-2.

9. The Title VII claims are authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.

10. Jurisdiction to grant injunctive and declaratory equitable relief as well as to award damages is invoked pursuant to 42 U.S.C. § 2000e-5(g).

11. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Northern District of Indiana, Lafayette Division.

## IV.  VENUE

12. Dr. Lin is a resident of Tippecanoe County in the State of Indiana and is a citizen of the United States of America.

13. Defendant Franciscan Alliance, Inc. doing business as "Franciscan St. Elizabeth Health" is a limited liability corporation that is organized in the State of Indiana. St. Joseph County, Indiana is its principal business location.

14. Defendant Franciscan Alliance, Inc. doing business as "Franciscan Physician Network" is a limited liability corporation that is organized in the State of Indiana. St. Joseph County, Indiana is its principal business location.

15. The unlawful employment practices alleged herein primarily arose in Lafayette, Indiana, which is located within Tippecanoe County, Indiana. Tippecanoe County is located in the Northern District of Indiana.

16. Thus, this cause of action is properly venued in the Northern District of Indiana under 28 U.S.C. § 1391(b), which allows for an action to be brought in the district where the defendant resides or in which the cause of action arose.

## V.  PLAINTIFF

17. Dr. Lin is a citizen of the United States, and is currently, as he was during all times relevant to this Complaint, a resident of Tippecanoe County in the State of Indiana.

18. Dr. Lin resides in Lafayette, Indiana.

19. Dr. Lin's national origin is Taiwanese.

20. Dr. Lin's race is Asian.

21. Dr. Lin is a person entitled to protection under Title VII based on his national origin and race.

## VI.     DEFENDANTS

22. Defendant Franciscan Alliance, Inc. doing business as "Franciscan St. Elizabeth Health" is a limited liability corporation with its principal place of business located at 1515 W. Dragoon Tr., Mishawaka, IN, 46544.

23. Defendant Franciscan Alliance, Inc. doing business as "Franciscan Physician Network" is a limited liability corporation with its principal place of business located at 1515 W. Dragoon Tr., Mishawaka, IN, 46544.

24. At all times relevant to this action, Franciscan employed Dr. Lin.

## VII.    STATEMENT OF FACTS

**A.     Franciscan hired Dr. Lin in September 2014 as the Medical Director of the Infection Control Department and as a physician, and for 6 years, Dr. Lin's performance and provision of patient care was unquestioned.**

25. Franciscan hired Dr. Lin as the Medical Director of the Infection Control Department and a physician at Franciscan St. Elizabeth Health in September 2014.

26. Dr. Lin is the only physician who specializes in infectious diseases on Franciscan's Lafayette campus.

27. For nearly six years, Dr. Lin was not informed of any significant performance deficiencies, and he was never found "outside the standard of care" in any peer review of the patient care that he provided.

**B.     Despite Dr. Lin's loyalty and hard work on behalf of Franciscan, he was treated with disrespect and was harassed.**

28. From the time that Dr. Lin began his employment with Franciscan, he was demeaned, bullied, and harassed by other Caucasian physicians.

4

29. The orthopedic group, for example, refused to work with Dr. Lin during the first approximately 6 months of his employment without a valid basis, although Dr. Lin was the only physician who specialized in infectious diseases on Franciscan's Lafayette campus.

**C. By the beginning of 2020, the demeaning treatment and harassment began to exponentially increase with the COVID-19 pandemic.**

30. By early 2020, Franciscan's demeaning treatment and harassment of Dr. Lin began to accelerate with the COVID-19 pandemic.

31. For instance, at the end of January 2020, Dr. Lin wrote a detailed letter containing his recommendations for early preparation for the COVID-19 pandemic, which Franciscan ignored despite the fact that Dr. Lin was the only physician who specialized in infectious diseases on Franciscan's Lafayette campus.

32. In February 2020, Franciscan rejected Dr. Lin's requests for N95 masks and eye shields for all personnel that might be screening members of the public for admission to the hospital.

33. One of Dr. Lin's supervisors even yelled at Dr. Lin during a meeting because Dr. Lin—an infectious disease specialist—suggested these precautions, although Dr. Lin's recommendations aligned with the CDC's own recommendations.

34. Later, Dr. Lin was told to get "on board" with advising the nursing staff that surgical masks were as safe as N95 masks because Dr. Lin's suggestion of wearing N95 masks was supposedly "scaring people."

35. Franciscan even threatened to take away an N95 mask from a nurse who worked with Dr. Lin in an attempt to get Dr. Lin in line, although this nurse was over 60 years old and had a spouse with significant preexisting conditions.

36. Based on Dr. Lin's knowledge, training, experience, and review of pertinent medical literature, N95 masks were shown to be far more effective in preventing the transmission of COVID-19.

37. Franciscan was also aware at the time that N95 masks were shown to be far more effective in preventing the transmission of COVID-19, yet Franciscan asked Dr. Lin to make a false statement to nursing staff that surgical masks were as effective as N95 masks.

38. Accordingly, Dr. Lin asked his supervisors to place their bases in writing for this recommendation of surgical masks instead of N95 masks, and they agreed but never actually did so.

39. Franciscan eventually provided N95 masks to Franciscan employees when a Franciscan physician contracted COVID-19, but many employees who had potential contact with COVID-19 patients were still discouraged from using N95 masks and were told N95 masks were not needed.

40. Franciscan has recently implemented a policy requiring its employees to use N95 masks when treating, dealing with, or at high risk for encountering COVID-19 patients—the recommendation Dr. Lin made at the beginning of the COVID-19 pandemic.

41. Because COVID-19 is believed to have originated in China, Dr. Lin believes his closely-related Taiwanese heritage and Asian national origin motivated Franciscan to view his recommendations as suspect, even though he is an infectious disease specialist.

**D.     After over 5 years of no peer review issues, Dr. Lin was found to have been "outside the standard of care" by the Medicine Standards Committee on 3 or 4 occasions beginning around April 2020.**

42. In his over 5 years of experience with Franciscan, no one had found that Dr. Lin provided substandard patient care.

43. Suddenly, however, Dr. Lin was found "outside of the standard of care" by the Medicine Standards Committee on 3 or 4 occasions beginning on or around April 2020.

6

44. These findings were both incredibly unfounded and unprecedented; non-minority physicians with widely known performance deficiencies were treated more favorably.

45. For the first time in his career, patient files were sent to an external peer reviewer, who determined that some cases had been a deviation in care of either minimal or no concern and others, at most, had been a deviation in care of a "moderate" concern with no harm to patients.

46. Dr. Lin hired an independent expert, who on his review of the same patient records concluded that he had "the upmost confidence in Dr. Lin's abilities" and any "issues raised in these ten cases do not rise to the level of substantial deviation below standard of care."

47. Notably, in one case that was found below the standard of care, the standard of care had actually been violated by a Caucasian physician because he had altered Dr. Lin's recommended course of treatment. Dr. Lin's recommended course of treatment met the appropriate standard of care.

48. To Dr. Lin's knowledge, there were no consequences for this Caucasian physician even though he had caused a deviation from the standard of care by changing Dr. Lin's recommended course of treatment.

**E.    In June and July 2020, Dr. Lin reported discrimination and harassment based on his national origin to Franciscan's human resources department.**

49. Dr. Lin filed a complaint both verbally and in writing with Franciscan's human resources department in June and July 2020 alleging discrimination and harassment based on his national origin.

50. The HR representative requested that Dr. Lin answer some follow up questions to these complaints.

51. Dr. Lin asked the HR representative to send these questions to him by email, so Dr. Lin could provide a more thorough reply because verbal communications are more difficult for Dr. Lin than written communications, and he processes information better via written correspondence.

7

52. Although this HR representative agreed to send these follow up questions to Dr. Lin via email, the promised follow-up email never arrived.

53. No other follow-up or remedial action was taken by Franciscan in connection with Dr. Lin's complaints of discrimination and harassment based on his national origin.

54. The harassment and differential treatment of Dr. Lin continued, and Franciscan began retaliating against Dr. Lin because of his discrimination and harassment complaints.

55. Dr. Lin also continued to complain about this treatment by Franciscan, including by submitting incident reports via Franciscan's reporting system in August and September 2020.

56. Franciscan continues to threaten Dr. Lin's employment with unfounded peer review actions.

57. The peer review actions have largely been led by the Chair of the Medicine Standards Committee, about whom Dr. Lin complained to HR in June and July 2021.

58. Dr. Lin has also complained the Medical Executive Committee ("MEC") regarding the discriminatory and harassing treatment he has received but his complaints have been ignored. Instead, the MEC has targeted Dr. Lin and told him he needs to cooperate with the Medicine Standards Committee and the MEC or risk further negative peer review action.

59. Caucasian physicians have been treated more favorably than Dr. Lin.

60. As a direct and proximate result of the foregoing conduct:

    a. Dr. Lin has suffered damage to his career;

    b. Dr. Lin has suffered mental and physical anguish; and

    c. Dr. Lin has incurred additional financial losses, including the costs associated with invoking his federally protected civil rights.

## VIII.  STATEMENT OF CLAIMS

### COUNT I
*(National Origin and Race Discrimination/Harassment in Violation of Title VII of the Civil Rights Act of 1964)*

61. Plaintiff incorporates the allegations in paragraphs 1 through 60 above, and, in addition, alleges that Franciscan discriminated against Dr. Lin on the basis of his national origin and race in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*

62. Dr. Lin's national origin is Taiwanese, and his race is Asian.

63. Dr. Lin was subjected to a number of adverse employment actions, including, but not limited to: not responding to or investigating Dr. Lin's discrimination and harassment complaints; being subjected to heightened scrutiny of his work; being belittled and harassed on a daily basis; having his professionalism called into question without cause; and being subjected to multiple peer review processes without cause.

64. Dr. Lin was qualified for his positions as Medical Director and physician with Franciscan.

65. Similarly situated employees outside of Dr. Lin's protected class were not subjected to the same adverse employment actions when they engaged in the same and/or worse conduct as Dr. Lin.

66. In addition, although Dr. Lin reported unlawful harassment on the basis of his national origin by his supervisors and coworkers to Franciscan on multiple occasions, Franciscan failed to remedy the harassment, which created a hostile work environment that has never been corrected or addressed by Franciscan.

## COUNT II
*(Retaliation in Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3)*

67. Plaintiff incorporates the allegations in paragraphs 1 through 66 above, and, in addition, alleges that Franciscan retaliated against Dr. Lin in violation of Title VII of the Civil Rights Act of 1964.

68. Dr. Lin engaged in protected activity, including, but not limited to, reporting and making complaints about national origin discrimination and harassment to Franciscan's human resources department on multiple occasions; this was protected activity.

69. Because Dr. Lin complained about the discrimination and/or harassment against him, Franciscan subjected Dr. Lin to multiple peer review actions without cause; this was an adverse action by Franciscan.

70. Franciscan retaliated against Dr. Lin for engaging in protected activity.

71. Franciscan believed that Dr. Lin was engaged in or planning to engage in additional Title VII protected activity, including, but not limited to, reporting discrimination to HR, filing a Charge of Discrimination with the EEOC, or taking other legal action. Franciscan took adverse employment actions against Dr. Lin in retaliation for his actual and perceived Title VII protected activity, including, but not limited to: being subjected to numerous instances of harassment; having his professionalism called into question without cause; and being subjected to heightened scrutiny of his work—including multiple peer reviews—without cause.

### IX. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Dr. David Lin prays for a judgment in his favor against Defendants, and prays that the following relief be awarded:

(a) Grant a permanent injunction enjoining Franciscan, its officers, successors, assigns, and all persons in active concert or participation with it, from engaging in national origin discrimination and any other employment practice, which discriminates on the basis of national origin, and from engaging in retaliation.

(b)     Order Franciscan to institute and carry out policies, practices and programs which provide equal employment opportunities for individuals based on their national origin, and which eradicate the effects of its past and present unlawful employment practices.

(c)     Order Franciscan to make whole Dr. Lin by providing appropriate back pay and front pay for actual damages with pre-judgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to Dr. Lin's pecuniary losses.

(d)     Order Franciscan to make whole Dr. Lin by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, including medical expenses, in amounts to be determined at trial.

(e)     Order Franciscan to make whole Dr. Lin by providing compensation for past and future non-pecuniary losses resulting from the unlawful employment practices complained of above, including emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation in amounts to be determined at trial.

(f)     Order Franciscan to pay Dr. Lin punitive damages for its malicious and/or reckless conduct described above, in amounts to be determined at trial.

(g)     Order Franciscan to reinstate Dr. Lin to an appropriate position, at an equal or improved salary.

(h)     Order Franciscan to pay Dr. Lin special damages, in amounts to be determined at trial.

(i)     Order Franciscan to pay damages to Dr. Lin for any and all injuries to his career, in amounts to be determined at trial.

(j)     Award Dr. Lin the costs of this action including reasonable attorneys' fees and any such further relief as the Court may deem just, proper, and equitable.

(k)     Grant such further relief as the Court deems necessary and proper in the public interest.

## X.    RESERVATION OF RIGHTS

Pursuant to the rules of pleading and practice, Plaintiff reserves the right to assert additional violations of federal and state law.

## XI. JURY TRIAL

Plaintiff demands trial by jury on all issues so triable.

Respectfully submitted,

*s/ Sandra L. Blevins*
Sandra L. Blevins, Attorney No. 19646-49
Jamie A. Maddox, Atty. No. 26522-49
Courtney E. Endwright, Attorney No. 30557-49
Chad H. Holler, Atty. No. 35253-49

*Attorney for Plaintiff David Lin, MD*

BETZ + BLEVINS
One Indiana Square, Suite 1660
Indianapolis, Indiana 46204
Office: (317) 687-2222
Fax: (317) 687-2221
E-mail: litigation@betzadvocates.com