UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION AT LAFAYETTE

| | | |
|---|---|---|
| DAVID LIN, MD, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 4:21-CV-57-PPS-JEM |
| | ) | |
| FRANCISCAN ALLIANCE, INC., d/b/a | ) | |
| FRANCISCAN ST. ELIZABETH | ) | |
| HEALTH and FRANCISCAN ALLIANCE, | ) | |
| INC. d/b/a FRANCISCAN PHYSICIAN | ) | |
| NETWORK, | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

This matter is before the Court on Plaintiff's Verified Motion to Compel Deposition Testimony, Information, and Documents [DE 56], filed on October 20, 2023, and discussed at a hearing on November 14, 2023.

**I.      Background**

Dr. Lin filed his Complaint on August 25, 2021, alleging race and national origin discrimination in employment. The Court issued a scheduling order on February 4, 2022, and a Protective Order on April 11, 2022. Discovery was extended on several occasions; currently fact and expert discovery close and mediation is to be completed by February 10, 2024.

On June 16, 2023, the Court held a telephonic conference to discuss the application of the Indiana Peer Review Act to this case. Thereafter, the parties submitted briefs on the applicability of that Act. Neither of the briefs included specific questions, document requests, or interrogatories at issue. The Court ordered Defendant to provide the peer review file(s) applicable to any peer review conducted in which Plaintiff was the physician whose conduct was being reviewed. The

1

Court did not address whether the asserted privilege extended to peer reviews of other health care providers, as that issue was not presented to the Court.

Plaintiff filed the instant motion on October 20, 2023. Defendants filed their response on November 2, 2023, and Plaintiff filed his reply on November 9, 2023. The Court held a hearing on November 14, 2023, and heard argument on the issues.

## II.     Standard of Review

Pursuant to Federal Rule of Civil Procedure 26, the scope of discovery is "any nonprivileged matter that is relevant to any party's claim or defense. . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Furthermore, the Rule provides that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Likewise, "[t]he scope of material obtainable by a Rule 45 subpoena is as broad as permitted under the discovery rules." *Graham v. Casey's Gen. Stores*, 206 F.R.D. 251, 253 (S.D. Ind. 2002); *see also Teton Homes Europe v. Forks RV*, No. 1:10-CV-33, 2010 WL 3715566, *2 (N.D. Ind. Sept. 14, 2010). Relevancy is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (citing *Hickman v. Taylor*, 329 U.S. 495, 501 (1947)).

A party may seek an order to compel discovery when an opposing party fails to respond to discovery requests or provides evasive or incomplete responses, s*ee* Fed. R. Civ. P. 37(a). A party objecting to the discovery request bears the burden of showing why the request is improper. *See McGrath v. Everest Nat'l Ins. Co.*, 625 F. Supp. 2d 660, 670 (N.D. Ind. 2008). The Court has broad

discretion when determining matters related to discovery. *Thermal Design, Inc. v. Am. Soc'y of Heating, Refrigerating & Air-Conditioning Eng'rs, Inc.*, 755 F.3d 832, 837 (7th Cir. 2014); *Rennie v. Dalton*, 3 F.3d 1100, 1110 (7th Cir. 1993).

Federal Rule of Civil Procedure 37 governs motions to compel and provides that any motion to compel "must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to resolve the dispute without court action." Fed. R. Civ. P. 37(a)(1). Similarly, Northern District of Indiana Local Rule 37-1 provides, "A party filing any discovery motion must file a separate certification that the party has conferred in good faith or attempted to confer with other affected parties in an effort to resolve the matter raised in the motion without court action." N.D. Ind. L.R. 37-1. The Court may deny a discovery motion if it is not accompanied by a proper certification. *Id.*

## III.    Analysis

Plaintiff's instant motion seeks: production of the peer review files of other health care providers; the Court to mandate that deposition questions be answered about peer review of other health care providers; an *in camera* review of certain documents as to which the attorney-client privilege has been asserted; and production by Defendants of a Rule 30(b)(6) witness as to "Defendants' factual basis, reasons, rationale, or justification supporting and/or relating to any Affirmative Defenses." Defendants argue that Plaintiff is not entitled to the peer review records of other health care providers or to have questions about those peer reviews answered, that other documents withheld are properly subject to the protection of the attorney client privilege, and that the Rule 30(b)(6) topic at dispute is protected by the work product doctrine. Defendants also argue

that Plaintiff did not engage in sufficient meet and confer efforts prior to filing the instant motion.

A.  Rule 37 Compliance

Plaintiff filed a Rule 37 certificate, attaching four letters from Plaintiff's counsel to Defendants' counsel about deficiencies in the discovery responses and three letters from Defendants' counsel in response, and referencing two telephonic conversations on the peer review and attorney client objections, as well as a separate conversation and letter exchange about the 30(b)(6) deposition notice. Defendants argue that, although there was some communication between the parties, there has been no meet and confer as to the Rule 30(b)(6) topic at issue or the questions certified as the depositions. Plaintiff argues that because Defendants made clear that their witnesses would not answer the certified questions, and that they would not produce a Rule 30(b)(6) witness on the disputed topic, further efforts to meet and confer to resolve those differences would be futile, and therefore Rule 37 has been satisfied. The parties agree that some objections were resolved through the letter exchange and telephone conversations.

The August 28, 2023 letter from Defendants' counsel addresses the issue of the certified questions, on p. 2, and states "as it pertains to the certified questions from the depositions of [various doctors], we will maintain those objections for the same reasons explained in Part I above [asserting the peer review privilege]." The letter also stated Exhibits 46, 57, 76, and 77 were "confidential attorney client communication[s] protected by the attorney client communication privilege" and they maintained their objection to questions about them. Ex. 12 p. 2 [DE 56-12]. That position was confirmed by Defendants' counsel in a letter dated October 6, 2023. Ex. 14 [DE 56-14].

After Plaintiff issued his Rule 30(b)(6) deposition notice on August 10, 2023, counsel

discussed Defendants' objections during an August 24, 2023 call, and on September 5, 2023, Defendants followed up with a letter in which they stated "Franciscan objects to providing the testimony requested [as to factual basis, reasons, rationale, or justification for Defendants' affirmative defenses] on the grounds that such information is protected by the Attorney Client and Work Product privileges." Ex. 16 p. 1 [DE 56-16]. Plaintiff's response letter, dated September 19, 2023, disagreed with Defendants' analysis and stated "we will need to address this issue with Judge Martin." Ex. 17 p. 2 [DE 56-17].

The parties have engaged in extensive efforts to discuss discovery disputes and were able to make headway in resolving some of their disputes. It does appear that the parties were less than willing to compromise on the issues raised in the instant motion but it does not appear to the Court that the parties failed to attempt to discuss all of their disputes. Rather, many of the communications seem to have been undertaken not in an effort to resolving any differences, but in an effort by both parties to get the other party to agree with their position. Although the Court is not denying the motion for a failure to comply with Rule 37, the Court reminds counsel of their obligation to make good faith efforts to resolve differences before seeking court intervention. *See* Fed. R. Civ. P. 37; N.D. Ind. L.R. 37-1.

B.  Peer Review

The Indiana Peer Review Act ("IPRA") established that "[a]ll proceedings of a peer review committee are confidential" and "[a]ll communications to a peer review committee shall be privileged communications," with certain exceptions. Ind. Code 34-30-15-1(a)-(b). However, the federal common law of privilege governs disclosure in cases involving federal claims even when there are pendent state law claims. *Bonzani v. Goshen Health Sys.,* No. 3:19-CV-586-DRL-MGG,

2022 U.S. Dist. LEXIS 117614, at *4 (N.D. Ind. July 5, 2022) (citing *Mem'l Hosp. for McHenry Cnty. v. Shadur*, 664 F.2d 1058, 1061 n.3 (7th Cir. 1981); *Mattice v. Mem'l Hosp. of S. Bend*, 203 F.R.D. 381, 384 (N.D. Ind. 2001)). There is no federal privilege for peer review committee proceedings. *Univ. of Pa. v. E.E.O.C.*, 493 U.S. 182, 195 (1990) ("A privilege for peer review materials has no . . . historical or statutory basis" in federal common law.). When the federal interest in the case is important, and the peer review evidence is central to the claims, a peer review privilege is not appropriate when the information within the peer review materials sought "appears to represent the only source of evidence" from which the party can establish certain core elements of the case. *U.S. ex rel. Roberts v. QHG of Ind., Inc.*, 1998 U.S. Dist. LEXIS 23512, at *9, 1998 WL 1756728, at *3 (N.D. Ind. Oct. 8, 1998). The parties do not cite to, and the Court has not found, a federal case where the evidence in question was central to a federal claim and the peer review privilege was sustained.

Furthermore, the privilege created by the IPRA is not absolute even for state law claims. Information which is "otherwise discoverable or admissible from original sources" is not protected from disclosure. Ind. Code § 34-30-15-3(a). The health care provider who is the subject of the peer review proceeding is entitled to access to the peer review information. Ind. Code § 34-30-15-4 ("[A] professional health care provider under investigation shall be permitted at any time to see the records accumulated by a peer review committee pertaining to the provider's personal practice."). Accordingly, Plaintiff is entitled to the peer review file(s) applicable to any peer review conducted in which he was the physician whose conduct was being reviewed. *See also Bonzani*, 2022 U.S. Dist. LEXIS 117614, at *9.

The Court previously required disclosure of Plaintiff's peer review records. Plaintiff now

seeks several other categories of peer review records and documents. Plaintiff also seeks to compel answers to two interrogatories. After the filing of the instant motion, Defendants supplemented their response to those interrogatories, which identified 70 physicians who met the qualifications set forth therein. Accordingly, it appears that the interrogatories are no longer an issue. The Court considers the other requests in turn.

     i.    *Peer Review Records of Other Health Care Providers*

Plaintiff seeks the peer review and/or Medical Staff Committee records of Dr. Douglas Rookstool (request #9), "any meeting minutes of any Peer Review Committee and/or Medical Staff Committee relating to any incident report or any accusations of inappropriate conduct related in any way to any Franciscan physician at St. Elizabeth" (request #23), and "any and all documents . . . relating to any peer review of any physician at St. Elizabeth by NorthGauge Healthcare Advisors" (request #32). Plaintiff also seeks personnel records of certain identified individuals (request #27), as well as of "Franciscan physicians who practice at St. Elizabeth, who did not allege race, national origin, or ethnicity discrimination or retaliation, including but not limited to . . . any patient surveys; any complaint or grievance made or levied against these employees by another employee or agent of Franciscan; any complaint or grievance made or levied against these physicians by a patient of Franciscan; and/or any review by any Franciscan Peer Review Committee and/or Medical Staff Committee" (request #26). Plaintiff seeks documents relating to any peer review of St. Elizabeth physicians by NorthGauge Healthcare Advisors between January 1, 2016, and present (request #32) and Franciscan's engagement of, and any communications with, any entity for outside or external peer review of any St. Elizabeth physicians (requests #34 and 35). Plaintiff also seeks records relating to the Medicine Standard Committee's involvement in

reviewing patient cases related to antibiotics (request #29). Plaintiff seeks documents relating to any peer review of St. Elizabeth physicians by NorthGauge Healthcare Advisors between January 1, 2016 and present (request #32) and Franciscan's engagement of any entity for outside or external peer review of any St. Elizabeth physicians (request #34). Finally, Plaintiff seeks production of documents related to Defendants' denial of paragraph 49 of Plaintiff's Complaint (request #87).

Defendants objected to producing any such records, including those of Plaintiff. Although they have now provided Plaintiff's records, Defendants continue to assert that all peer review records are privileged under the IPRA and therefore not subject to disclosure. As addressed above and discussed in this Court's June 18, 2023, Order [DE 44], the IPRA does not apply to federal litigation when the federal claim at issue is central to the litigation. In this case, Plaintiff claims that Defendants unlawfully discriminated against him on the basis of his race and his national origin, in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq*.

Defendants, who bear the burden of establishing that their objections to production are proper, have failed to establish that the IPRA prohibits the disclosure of other health care providers' peer review records in an employment discrimination case, or that there is a comparable federal privilege. *McGrath v. Everest Nat. Ins. Co.*, 625 F. Supp. 2d 660, 670 (N.D. Ind. 2008) (holding that a party objecting to the discovery request bears the burden of showing why the request is improper). Upon review of supplemental interrogatory answers submitted by Defendants after the Motion to Compel was filed, Plaintiff has now offered to limit his request to the approximately 20 Caucasian physicians identified in that supplemental response.[1] Plaintiff argues

---

[1] Plaintiff, by agreeing to so limit the request, is not precluded from seeking the other records in the future, if he can establish that the limitation was overbroad, and the Court may change this ruling upon receipt of fully supported motion and briefing on the issue, if needed.

that these records are needed to establish the treatment of comparators as needed for indirect proof of discrimination under the *McDonnell-Douglas* framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

During the hearing, the parties explained that personnel files of three physicians had been tendered, those physicians were: Dr. Rookstool who is the person who was allegedly instrumental in the peer reviews Plaintiff was subjected to, and Drs. Ali and Al-Haddadin who are both infectious disease physicians subject to the same standards and policies as Plaintiff. Because Defendants have failed to assert a viable federal privilege that protects those records, they have not met their burden of establishing that their objections should be sustained, and the Court notes that Plaintiff has proposed what appear to be reasonable limitations on his requests. Defendants also argue that the requests are not proportional to the needs of the case but make no substantive argument on how the requests are not proportional. *See M.G. Skinner & Assocs. Ins. Agency v. Norman-Spencer Agency, Inc.*, 845 F.3d 313, 321 (7th Cir. 2017) ("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority."). The limitations proposed by Plaintiff appear to be sufficient to keep the request from being disproportionately burdensome, even if the original request was overbroad.

Accordingly, the Court will order Defendants to turn over the peer review files of the approximately 20 Caucasian physicians identified by Plaintiff based on the Defendants' supplemental interrogatory answers, and the peer review files of Drs. Rookstook, Ali, and A-Haddadin in response to requests 9, 23, 26, 27, 29, 32, 34, and 87.

ii.   *Certified Questions about Peer Reviews of other Health Care Providers*

Plaintiff also argues that Defendants' certification of various questions during depositions

was improper and that they should be required to answer. The questions relate to the witness's involvement in peer review committees (certified question #1), involvement in a referral to the MEC (certified question #2), involvement with a surgical standards committee case (certified question #5), whether a particular doctor was the person who made a discrimination claim investigated by the MEC (certified question #6), and knowledge of whether a particular doctor's care was discussed in a peer review committee (certified question #7).

To the extent the above questions relate to any of the doctors whose peer review records are to be turned over, deponents must answer questions about those doctors and the peer reviews. To the extent a doctor made a discrimination claim, and that claim was investigated, those questions must be answered. Since certified question 7 relates to Dr. Rookstool, that question must be answered. Defendants have not met their burden of showing that the peer review privilege extends to this litigation, so questions about the peer review process, peer reviews of any of the identified doctors (and those identified by Plaintiff from the supplemental interrogatory answers), or any other doctor who has complained of discrimination, or any other infectious diseases doctor must be answered,.

### iii.    *Personnel Records of Other Health Care Providers*

Plaintiff requested the personnel records, including peer review records, of Franciscan physicians who did not allege race, national origin, or ethnicity discrimination and an identified list of medical professionals in requests #26 and 27. Defendants argue that non-party personnel records should be kept confidential.

As courts have recognized, provision of personnel files "may infringe on the privacy interests of non-parties. While it is true that no privilege exists to protect personnel files, courts

recognize that such information is sensitive, and that they should weigh the value of the information sought against the burden of providing it." *Doyle v. City of Chicago*, 943 F. Supp. 2d 815, 828 (N.D. Ill. 2013). Accordingly, the Court "ha[s] broad discretion to limit a request for the discovery of personnel files, in order to prevent the dissemination of personal or confidential information about employees." *Brunker v. Schwan's Home Serv., Inc.*, 583 F.3d 1004, 1010 (7th Cir. 2009) (citing *Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 320 (7th Cir.2003)).

     To the extent that personnel records do not include peer review records, and hence are not addressed above, the Court will order Defendants to produce only portions of the personnel records of Dr. Ali and Dr. Al-Haddadin, as well as of the physicians identified as potential comparators by Plaintiff from the supplemental interrogatory answer, which relate to any employment actions resulting from peer review.

    *iv.*    *Documents relating to third party peer review entities*

     Plaintiff also seeks records relating to Defendants' engagement of, communications between Defendants and NorthGauge Healthcare Advisors, and the reason for the end of the engagement of NorthGauge Healthcare Advisors (requests #30, 31 and 33). The Court is ordering that Defendants turn over the peer review records of the approximately 20 white physicians disclosed in the supplemental answers to interrogatories 11 and 16, as well as Dr. Rookstool, Dr. Ali and Dr. Al-Haddadin, which would include any peer review conducted by any third-party entity, including, but not limited to, NorthGauge Healthcare Advisors or other third party outside peer review entities. Plaintiff argues that he is entitled to other documents, including communications between and administrative documents related to the engagement and termination

of third-party peer review entities, because those documents show the interactions between those entities and Defendants. Defendants argue that they have tendered all documents that have to do with Plaintiff and that any other information would be within the peer review files of other physicians and thus protected by the peer review privilege. They do not argue that any documents other than those within a physician's peer review record are privileged, and they must turn over the requested records, including communications, engagement agreements, and termination agreements, and other similar documents as requested. Plaintiff indicates in his reply that he is willing to limit the requests set forth in requests 30, 31, 33, and 34 to a particular time period, and the Court accordingly limits the requirement to produce those documents to a time period from January 1, 2016, to the present.

    C.  <u>Attorney-Client Privilege</u>

Plaintiff also argues that Defendants improperly asserted the attorney client privilege about various documents and questions during depositions. Plaintiff asserts that he requested that Defendants submit those documents to the Court for an *in camera* review, but Defendants refused, and Plaintiff therefore had no choice but to file the instant motion to compel. Defendant argues that the documents are privileged because they include in house counsel from whom advice was sought, and their privilege log is sufficient.

Plaintiff identifies a series of Bates-numbered documents, as well as four deposition exhibits #46, 57, 76, and 77 (which are the subject of certified questions #3, 4, 8, 9, 10, and 11), that he argues are not privileged. It appears that each of the redacted emails is to or from in-house counsel for Defendants. However, the unredacted email exchanges, which are part of those exhibits, do not include counsel. The unredacted email exchanges are not privileged. Questions

may be asked about the unredacted emails.

Plaintiff also argues that Defendants have not established that all recipients of each redacted email are in house counsel, counsel, or employees of Defendants. When a party is a corporate entity, the issue of privilege is more complicated. The privilege applies to communications:

a) made by employees to counsel at the direction of corporate superiors;
b) in order to secure legal advice;
c) concerning matters within the scope of the employee's corporate duties;
d) where the employees themselves were aware they were being questioned in order that the corporation could obtain legal advice; and
e) the communications were kept confidential since the time they were made.

*Acosta v. Target Corp.*, 281 F.R.D. 314, 320-22 (N.D. Ill. 2012) (quoting *Upjohn Co. v. United States*, 449 U.S. 383 (1981)). To the extent that Defendants have not established that all recipients of each redacted email was either in house counsel, counsel, or employees of Defendants, the emails must be disclosed. The Court has insufficient information before it to permit it to determine who each recipient or sender within an email chain is or whether the other requirements set forth above are met, as the privilege log does not break down each email within a chain by recipients, and portions of the email chains reviewed by the Court contain emails which do not include counsel. *Welch v. Eli Lilly & Co.*, No. 1:06-cv-0641-RLY-JMS, 2009 U.S. Dist. LEXIS 21417, at *34-35 (S.D. Ind. March 16, 2009). Defendants have therefore not met their burden of establishing that their blanket claim of privilege is appropriate.

Plaintiff requests that the Court review all of the questioned documents *in camera* to determine whether they include privileged communications. However, the Court is not in the business of reviewing all documents to which privilege is claimed, particularly given the deficiencies in the meet and confer process in this case described above. *Med. Assur. Co. v.*

13

*Weinberger*, No. 4:06-CV-117 JD, 2012 WL 5178148, at *6 (N.D. Ind. Oct. 17, 2012) ("broad permission to flood the Court with information *in camera* is not appropriate at this stage").

Defendants must produce any emails which do not seek legal advice or which include any recipients who are not employees and/or counsel for Defendants. Their privilege log must be amended to identify each email within an email chain as to which the privilege is claimed when not all of the emails include counsel. Parties should attempt to resolve any questions that remain about which documents are privileged before filing any additional motions with the Court.

D. Rule 30(b)(6) witness

Plaintiff argues that it is improper for Defendants to refuse to tender a Rule 30(b)(6) witness on the topic of Defendants' bases for asserting their affirmative defenses. Defendants argue both that their refusal is proper, since the topic is protected work product, and that there were insufficient Rule 37 meet and confer discussions on this topic.

Plaintiff's Rule 30(b)(6) deposition notice seeks a witness to testify as to Defendants' "factual basis, reasons, rational, or justification supporting and/or relating to any Affirmative Defense that Defendants asserted in this litigation." Defendants argue that inquiring into the factual basis or reasons for asserting an affirmative defense impermissibly impinge on the work product protection, because it seeks counsels' mental impressions, determinations, and factual and legal theories of the case. *Norco Indus., Inc. v. CPI Binani, Inc.*, 2012 WL 6508624, at *4 (N.D. Ind. Dec. 13, 2012). Plaintiff argues that he has identified several areas of inquiries that do not require information about counsels' thoughts or input and would therefore be permissible deposition topics. This is an example of how, if the parties had had sufficient good faith Rule 37 conversations, rather than a blanket denial by Defendants and a blanket insistence by Plaintiff,

14

portions of the instant motion may have been avoidable. Absent the parties' agreement, the Court reminds Plaintiff that he may not ask any questions which seek information about counsels' impressions, thoughts, strategies, theories, or determinations of which affirmative defenses were appropriate or why. Plaintiff may ask questions about facts within the knowledge of a corporate representative; however, it would be impermissible to ask how that fact supported a defense, or which facts in general support a defense. The parties are again reminded of their obligation to make good faith efforts to resolve any dispute which come up in the depositions about the scope of the inquiries before seeking additional Court involvement.

## IV.    Conclusion

For the foregoing reasons, the Court hereby **GRANTS in part and DENIES in part** Plaintiff's Verified Motion to Compel Deposition Testimony, Information, and Documents [DE 56] as described above. Defendants are to tender the identified peer review records, and make arrangements for answering of certified questions 1, 2, 3, 5, and 6, as well as appropriate follow up questions consistent with this Order, within twenty-one days, on or before **December 8, 2023**.[2]

Although attorney's fees may be awarded when a motion to compel is granted in part, the Court finds that in this case, the "circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(B) and (C).

SO ORDERED this 17th day of November, 2023.

s/ John E. Martin
MAGISTRATE JUDGE JOHN E. MARTIN
UNITED STATES DISTRICT COURT

cc:    All counsel of record

---

[2] Defendants may make a fully supported, or agreed, motion for an extension of this time, if needed, but the Court encourages compliance in order to meet the discovery deadlines.