UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION AT LAFAYETTE

| | |
|---|---|
| DAVID LIN, MD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Cause No. 4:21-cv-57-PPS |
| ) | |
| FRANCISCAN ALLIANCE, INC. d/b/a ) | |
| FRANCISCAN ST. ELIZABETH ) | |
| HEALTH and FRANCISCAN ) | |
| ALLIANCE INC. d/b/a FRANCISCAN ) | |
| PHYSICIAN NETWORK, ) | |
| Defendants. | |

## OPINION AND ORDER

This matter is before the Court on Plaintiff's Motion to Amend Judgment and/or Motion to Reconsider. [DE 157]. The motion has been fully briefed and is ripe for ruling. [DE 160; DE 162]. For the reasons explained below, the motion is denied.

### Legal Standard

Motions for reconsideration should be granted, "to correct manifest errors of law or fact or to present newly discovered evidence." *Oakwood Lab'ys, L.L.C. v. TAP Pharm. Prods., Inc.*, 2003 WL 22682321, at *1 (N.D. Ill. Nov. 13, 2003). A motion for reconsideration should be granted only if the court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the court by the parties, or has made an error not of reasoning but of apprehension. *Mindell v. Kronfeld*, 2004 WL 1595334, at *1 (N.D. Ill. July 15, 2004). A further basis for a motion for

reconsideration is a significant change in the law or facts since the submission of the issues to the court by the parties. Such problems rarely arise and the motion for reconsideration should be equally rare. *Id*.

## Discussion

The background facts underlying this case are discussed in substantial detail in my Opinion and Order granting Franciscan's motion for summary judgment. [*See* DE 155]. As such, I will refrain from repeating that background here and proceed to a discussion of the issues presented in Lin's Motion to Reconsider.

In his brief in support of his Motion to Reconsider, Lin explains that he seeks reconsideration under Federal Rule of Civil Procedure 59. [DE 157 at 1]. Lin argues that the Court made a "manifest error of fact" by failing to consider evidence from which a reasonable jury could conclude that Franciscan discriminated against him because of his national origin and/or race. [*Id*.] More specifically, Lin argues my prior opinion (1) disregards evidence that he was constructively discharged based on impending peer review actions after a continuing pattern of conduct by Dr. Rookstool, (2) disregards "evidence and/or reasonable inferences" that Dr. Rookstool exhibited animus towards Dr. Lin and other minority physicians, and (3) disregards evidence that Franciscan provided false reasons for opposing Dr. Lin's recommendations during the COVID pandemic. [*Id*. at 1-2].

As pointed out by Defendants' response brief, Lin improperly raises the exact same arguments I've already decided in my opinion granting summary judgment in

2

favor of Franciscan. *Poff v. Scullion*, 2025 WL 2462943, at *1 (E.D. Wis. Aug. 26, 2025) ("Motions for reconsideration are not a mechanism for losing parties to reargue issues decided against them."); *Larson v. Davidson Trucking, Inc.*, 2023 WL 4362484, at *1 (N.D. Ind. July 5, 2023) (same); *Alicea v. Thomas*, 2015 WL 143987, at *2 (N.D. Ind. Jan. 12, 2015) (same). Nevertheless, I will briefly address Lin's arguments here.

At the outset, Lin argues that my prior opinion misconstrued what he posits is the adverse action taken against him. Lin says that I examined and rejected as adverse actions the peer review process itself and Franciscan's behavior towards him (and his PPE recommendations during COVID) when the true adverse action was his "forced resignation" from his employment with Franciscan. [DE 157 at 4]. On the one hand, Lin says it was incorrect of me to "examine . . . the peer review processes" as the adverse action being claimed here. [*Id.*] On the other hand, Lin tells me "[t]he pretextual actions of Franciscan during the peer review processes and Franciscan's behavior towards Dr. Lin on Dr. Lin's PPE recommendations . . . eventually led to the forced resignation of Dr. Lin's employment." [*Id.* at 4-5].

For starters, most of my discussion in the opinion granting summary judgment relating to peer reviews was in the context of Lin's hostile work environment claim. [DE 155 at 18-20]. The peer reviews were the sum and substance of the hostile work environment claim, so of course I had to analyze whether the alleged harassment (the peer review process) was both subjectively and objectively offensive. *Milligan-Grimstad v. Stanley*, 877 F.3d 705, 713 (7th Cir. 2017). I also had to consider whether the allegedly

3

harassing conduct (again, the peer review process) was because of Lin's race or national origin. Consideration of the peer review process was therefore altogether proper in the context of his hostile work environment claim.

I also analyzed the peer reviews in the context of Lin's disparate treatment claim. [DE 155 at 23-24]. I did this out of an abundance of caution and presumed that the peer review process was an adverse employment action in and of itself. [*Id.*] But in any event, as I explained in my prior order, the evidence in the record failed to show that any action taken against Lin during the peer review process was because of his race or national origin. Indeed, the evidence in the record illustrates that Dr. Lin was subjected to peer reviews because of legitimate concerns related to his performance as a physician. [*Id*. at 18-19]. Prior to his resignation, Dr. Lin had three cases reviewed through Franciscan's internal peer review process with the Medicine Standards Committee (MSC). [DE 82-14 at 2-4, Rookstool Aff.]. Two of these cases were reviewed by the MSC due to a physician request, and one was reviewed due to a committee referral. [*Id.*] Dr. Lin also had multiple batches of his cases submitted for external peer review related to trends in his antibiotic treatment. [DE 155 at 5-6]. The evidence in the record shows that these cases were sent for external peer review because Dr. Lin was an infectious disease specialist and there was no other member of Franciscan's staff with that specialty. [DE 82-14 at 4-5, Rookstool Aff.]; [DE 82-14 at 98, Ex. H to Rookstool Aff.].

4

In sum, Franciscan articulated a race neutral reason for conducting the peer reviews and there was no evidence that Franciscan's stated reasons were a pretext to mask discriminatory motives. In other words, if it was an error for me to consider the peer review process as a standalone adverse action, the error was meaningless because there was nothing in the record to show that Lin's race or national origin had anything to do with Franciscan's decision to conduct the peer reviews or in the manner in which they were conducted.

It is true that Lin's principal theory in his disparate treatment claim was that his constructive discharge was the adverse employment action. As it relates to the constructive discharge claim, I again reviewed the various peer reviews of Dr. Lin conducted by Franciscan. I did this because in order to determine whether Lin was constructively discharged and, in essence, forced to quit his job, I had to examine the actions he claims led to his constructive discharge. And indeed, Lin himself, in his briefing on summary judgment, when arguing that he was constructively discharged, specifically told me that he had "been forced into multiple peer reviews" that were a "career-ending sham[.]" [DE 119 at 18-19]. In other words, the peer reviews served as a backdrop to his alleged forced resignation.

More to the point, Lin's claim that he was "constructively discharged" was fully addressed in my opinion granting summary judgment in favor of Franciscan. I started by pointing out just how high the bar is in proving a constructive discharge: a plaintiff needs proof that his working conditions were "unbearable" and that he had no choice

5

but to resign. *Wince v. CBRE, Inc.*, 66 F.4th 1033, 1043 (7th Cir. 2023). The evidence has to be "even more egregious" than that required for a hostile work environment claim. *Id.*

As explained in the opinion, the evidence in the record fails to show that Dr. Lin was constructively discharged. [DE 155 at 25-26]. No reasonable juror could conclude that Lin's workplace was intolerable or unbearable. Lin admits that he never saw any written communication from Franciscan saying that he was being forced to resign and never talked with anyone at Franciscan regarding his resignation or why it was occurring. [DE 123-2, Ex. 225-2, Lin Dep at 165:24-166:12]. Moreover, the parties agree that Franciscan never took any action against Dr. Lin's license to practice medicine or his credentials at Lafayette East. [DE 134 at 65-66, Def's Reply to Add. Material Facts]. Lin's claim that Franciscan's Medical Executive Committee (MEC) was going to attack his license, report him to the National Practitioner Data Bank, and ruin his career if he didn't quit his job is simply speculation without any basis in the evidence. [DE 157 at 6]. Lin himself acknowledged that the separation agreement he signed with Franciscan explicitly stated, "at the time of this agreement, physician is not under investigation by the medical staff of hospital and it's our position that a report to the National Practitioner Data Bank is not required." [DE 123-2, Ex. 225-2, Lin Dep at 198:3-198:9].

But again, let's presume I am wrong about all of this, and a reasonable juror could conclude that Lin was forced to resign because the conditions of his employment were simply unbearable. Let's not lose track of the simple fact that this is a *civil rights case* brought under Title VII. I diligently reviewed the massive record in this case to

6

determine if there was *any evidence* from which a reasonable juror could conclude that the unbearable working conditions that caused his resignation had anything to do with Dr. Lin's race or national original. I could find none.

Lin also complains that I failed to consider evidence showing he faced "racial animus" from Dr. Rookstool. [DE 157 at 9]. Quite the contrary, Dr. Rookstool's interactions with Lin were thoroughly discussed in my opinion with "Rookstool" (including references to his deposition) being mentioned a total of **47** times throughout the opinion. As explained in my summary judgment opinion, Dr. Rookstool openly admits that he's had disagreements with Dr. Lin. [DE 155 at 17]. However, there is no evidence in the record showing that any of those disagreements had anything to do with Dr. Lin's race or national origin.

The record shows that Dr. Lin submitted multiple complaints to Franciscan regarding professional disagreements with Dr. Rookstool, and none of these complaints mention discrimination based on race. [DE 155 at 28]. [*See also* DE 90-5; DE 94; DE 95; DE 96; DE 97]. Lin himself admitted that he does not recall Dr. Rookstool ever making any comments about his national origin or race. [DE 123-1, Ex. 225-1, Lin Dep. at 88:12-88:15]. The parties also agree that Dr. Rookstool has had disagreements regarding patient care with other physicians, including Caucasian physicians, and has referred those physicians for peer review. [DE 134 at 39, Def's Reply to Add. Material Facts].

There is no question that Dr. Lin thought he was being treated unfairly and that he and Dr. Rookstool repeatedly clashed. Perhaps Dr. Rookstool was a disagreeable,

7

overbearing, annoying, and meddlesome boss. Unfortunately, that matters not. The fact that Dr. Rookstool and Dr. Lin had professional disagreements does not lead to the automatic conclusion that Title VII has been violated. *Cole v. Bd. of Trs. of N. Illinois Univ.*, 838 F.3d 888, 896 (7th Cir. 2016) (explaining that the conduct complained of "must have either a sexual or racial character *or purpose* to support a Title VII claim"); *Patton v. Indianapolis Pub. Sch. Bd.*, 276 F.3d 334, 339 (7th Cir. 2002) ("Title VII does not guarantee a utopian workplace, or even a pleasant one.").

Finally, Lin asserts that Franciscan's concerns with his COVID recommendations were false and thus "evidence of pretext." [DE 157 at 15]. Again, there is no support for this in the record. As explained in my summary judgment opinion, the evidence in the record shows that Dr. Lin's recommendations were refused because there were N95 mask shortages and requiring N95 masks was not in line with Franciscan's mask policy. [DE 155 at 15-16]; [DE 125-2, Ex. 230, Tanselle Dep at 30:5-30:21]. Lin's Motion to Reconsider points to no evidence which supports his claim that Franciscan's offered reasons were a pretext, and the real reason Franciscan denied his mask recommendations was racial animosity or discrimination.

## Conclusion

To put it plainly, the evidence in the record simply does not establish that Dr. Lin faced a constructive discharge (or other adverse action) because of his race or national origin. Lin's motion for reconsideration presents arguments which are a carbon copy of those addressed and rejected in my opinion granting summary judgment in favor of

8

Franciscan. Lin has failed to demonstrate an error in my reasoning or point to any new evidence requiring a different result. *Obriecht v. Raemisch*, 517 F.3d 489, 494 (7th Cir. 2008) ("Rule 59(e) allows a court to alter or amend a judgment only if the petitioner can demonstrate a manifest error of law or present newly discovered evidence."). When a litigant is unhappy with a judicial decision, the correct course of action is to file an appeal, not to waste judicial resources presenting redundant arguments in a motion for reconsideration. *Coe v. Mortg. Elec. Registration Sys., Inc.*, 2025 WL 2459257, at *2 (S.D. Ind. Aug. 27, 2025) ("Arguments that the district court has already considered and rejected . . . should be directed to the court of appeals, not raised in a motion for reconsideration.").

**ACCORDINGLY**:

Plaintiff's Motion to Amend Judgment and/or Motion to Reconsider [DE 157] is **DENIED**.

**SO ORDERED**.

ENTERED: January 23, 2026.

/s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT